UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | | |
|---|---|---|
| CHRISTINE McCARTHY, | ) | No. CV 10-07773-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | (Social Security Case) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") erred in

```
                rejecting the opinion of Plaintiff's treating psychiatrist;
                and
     2.   Whether the ALJ failed to provide clear and convincing
          reasons to reject Plaintiff's subjective complaints.
(JS at 3.)
```

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE ALJ ERRED AT STEP TWO IN FINDING THAT PLAINTIFF**

**DOES NOT SUFFER FROM A SEVERE MENTAL IMPAIRMENT**

In her first issue, Plaintiff asserts that the ALJ erred in rejecting the opinions of her treating psychiatrist, Dr. Alexanian, as to her mental functional restrictions, and instead erroneously accepted the opinion of a one-time consultative examiner and a non-examining State Agency physician.

At Step Two of the sequential evaluation process (see below), the ALJ found that although Plaintiff has a medically determinable impairment of mental depression, that impairment "does not provide any limitations on the claimant's daily living activities, social functioning, or ability to maintain concentration, persistence and pace. It has not caused any episodes of decompensation of extended duration. This is not a severe impairment." (AR 22.)

The ALJ acknowledged that Plaintiff had been treated by Dr. Alexanian of MCLA Psychiatric Medical Group from July 2008 into 2009,

but rejected Dr. Alexanian's conclusions as inconsistent with both his treatment notes and with Plaintiff's own function report, in which she described engaging in a wide range of activities of daily living ("ADL"). (AR 22-23.)  The ALJ instead relied upon and accepted the results of a complete psychiatric examination ("CE") performed in January 2009 by Dr. Bagner (AR 356-359), and the supporting opinion of a non-examining State Agency physician, Dr. Brooks (AR 23-24), who found that Plaintiff's ADLs were not restricted, and that she had no difficulties in maintaining social functioning, or in the areas of concentration, persistence and pace.

**A.   Applicable Law.**

The Ninth Circuit has clearly articulated that an impairment or combination of impairments may be found to be not severe if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996).  Moreover, the Commissioner has stated in Social Security Ruling ("SSR") 85-28 (1985) that "[I]f an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the non-severe evaluation step."  Thus, it is well understood that step two is a "de minimis screening device [used] to dispose of groundless claims," Smolen, 80 F.3d at 1290.  An ALJ may only find that a claimant lacks a medically severe impairment or combination of impairments when the conclusion to that effect is "clearly established by medical evidence." SSR 85-28.  Further, while a claimant's statements about pain or other symptoms do not alone establish

3

disability, such evidence, in combination with medical signs and laboratory findings demonstrating a medical impairment, is clearly relevant.  See 20 C.F.R. §416.929(a)(2010).

**B.   Analysis.**

On August 20, 2008, Plaintiff completed, in detail, a Function Report in which she identified her ADLs. (AR 169-176.)  She described in great detail how she takes care of herself and her cat, and is able to prepare her own meals.  If she is hungry, she will prepare several courses, including appetizers, salad, main meal and dessert.  She prepares breakfast and lunch every day or sometimes just breakfast and dinner.  This takes her a half hour to an hour. (AR 171.)  As impressive as that might sound, she then indicates that she lives in an apartment without a kitchen. (Id.)  One questions how she might be able to prepare three and four course meals without a kitchen.  Similarly, some disturbing entries creep into her report.  She indicates, for example, that, "I can get angry often and yell at people for no apparent reason." (AR 174.)  She says that she does not handle stress very well, gets very upset, and often cries. (AR 175.)  She admits to being "delusional" regarding her apartment, stating that she believes that there are people hiding in the walls and her closet or under the floor, like a trap door with secret passages. (Id.)

These signposts of mental illness would not appear to have been erected by Plaintiff for the purpose of getting Social Security benefits.  Dr. Alexanian, who treated Plaintiff for quite a lengthy period of time, in July 2008 diagnosed that she was suffering from Major Depressive Disorder, Severe, with psychotic features and Post Traumatic Stress Disorder. (AR 299.)  In November 2008, Dr. Alexanian

4

completed a mental residual functional capacity ("RFC") assessment of Plaintiff, in which he made the same diagnosis.

In a Mental Disorder Questionnaire Form (AR 323-327), Dr. Alexanian noted that Plaintiff was very depressed and tearful; that she had anxiety, restlessness and difficulty in relaxing, and, that she had poor memory and difficulty concentrating. Dr. Alexanian also noted that she had auditory delusions, and believed that people were monitoring the doctor and tapping his phone. (AR 325.) Plaintiff was unable to use public transportation because of her fears, and she was socially isolated with no friends or social life.

Dr. Alexanian assessed a General Assessment of Functioning ("GAF") score in the range of 40 to 45, on a consistent basis. As this Court has noted in other decisions, the GAF score is intended to reflect a person's overall level of functioning at or about the time of the examination, not for a period of at least 12 consecutive months, which is required for a finding of impairment or disability. (See 20 C.F.R. §§ 416.905, 416.920(c) (2006).) GAF scores are intended to be used for clinical diagnosis and treatment and therefore do not directly correlate to the severity assessment set forth in Social Security regulations. Here, the ALJ failed to discuss them at all, and certainly did not rebut Dr. Alexanian's conclusion that Plaintiff's GAF scores are consistent with his diagnostic impressions. The Court's primary task here is to determine whether the ALJ was justified in rejecting Dr. Alexanian's opinion because it either was not supported by objective evidence, or was inconsistent with his treatment notes. On that score, the ALJ's decision falls short. The Court finds that Dr. Alexanian's conclusions are supported by his treatment notes, and they certainly appear to indicate a level of

5

impairment which qualifies as severe at Step Two of the sequential evaluation process.

The Court need not devote substantial attention to the consultative examination of Dr. Bagner. The issue here is not, strictly speaking, whether Dr. Bagner's conclusions should be accepted over those of Dr. Alexanian, because the Court has already determined that Dr. Alexanian's opinion was rejected without sufficient basis in the decision. But the Court does note that Dr. Bagner reported that Plaintiff would have mild to moderate limitations handling stress. In and of itself, this would appear to support a finding of severe mental impairment, since the regulations provide that where an impairment only causes mild limitations in defined areas of Plaintiff's mental functioning, the mental impairment will not be considered severe. (See 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).) While a finding that a claimant has a moderate limitation in a relevant area of mental functioning may not mandate a conclusion that a severe mental impairment exists, in this case such evidence would seem to corroborate the conclusions of the treating psychiatrist more than contradict them.

The Court need not devote substantial attention to Plaintiff's second issue, which concerns whether or not the ALJ erred in rejecting her subjective complaints. The ALJ relied upon asserted contradictions between Plaintiff's testimony at the hearing, and self-reporting in her Function Report. As the Court has already noted in its discussion of the first issue, there appear to be substantial questions about the accuracy of Plaintiff's self-reporting. These questions concern certain delusional statements (which were corroborated by her treating psychiatrist), such as indications that

she prepares complicated meals several times a day in an apartment which does not have a kitchen, and her beliefs that her walls are occupied by intruders. In any event, since these issues will be addressed de novo, the Court sees no need to delve into them further.

Based on the foregoing, this matter will be remanded for a new hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: August 19, 2011      /s/
                            VICTOR B. KENTON
                            UNITED STATES MAGISTRATE JUDGE